# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        **Plaintiff,**

-vs-                                                            Case No.  6:10-cv-1053-Orl-18GJK

**JESUS EXPEDITO FERNANDEZ** and
**UNIVERSAL EMPANADAS RESTAURANT,
INC.,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. No. 14)** |
| **FILED:** | **October 19, 2010** |

**THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED in part** and **DENIED in part.**

## I.    BACKGROUND

    On July 14, 2010, J & J Sports Production, Inc. (the "Plaintiff") filed a complaint (the "Complaint") for violations of the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 553, against Jesus Expedito Fernandez ("Fernandez"), individually, and as officer, director, shareholder, and/or principal of Universal Empanadas Restaurant, Inc. ("Universal Empanadas") (collectively, the

1

"Defendants"). Doc. No. 1. The Complaint contains two counts against the Defendants: Count I – violation of 47 U.S.C. § 605(a); Count II – violation of 47 U.S.C. § 553. Doc. No. 1. In its Complaint, Plaintiff alleges it possessed the exclusive right, by contract, to sell, market and promote the Pacquaio vs. Clottey championship boxing match (the "Broadcast") scheduled for March 13, 2010. Doc. Nos. 1 at 3; 14-1 at 2. Plaintiff entered into contracts with certain business entities in the state of Florida granting them the right to publicly exhibit the Broadcast to their patrons. Doc. No. 1 at 3. Plaintiff also entered into a contract with Signal Auditing Inc. to identify other establishments who televised the Broadcast without a license. Doc. Nos. 1 at 4; 14-1 at 2. In the Complaint, Plaintiff alleges that the Defendants, without a license, illegally televised the Broadcast in their establishment. Doc. No. 1 at 5-9. Plaintiff maintains that Defendants unlawfully intercepted, received and/or de-scrambled the satellite signal and exhibited the Broadcast at their commercial establishment located at 610 East Vine Street, Kissimmee, Florida 34744, at the time of its transmission, knowingly, willfully and for purposes of direct or indirect commercial advantage or private financial gain. *Id.* at 5. As a result, Plaintiff seeks damages of up to the maximum amount of $110,000.00 as to each Defendant. *Id.* at 7.

On August 11, 2010, Defendants were properly served with a copy of the summons and Complaint. Doc. Nos. 10, 11. On October 12, 2010, default was entered against the Defendants. Doc. No. 12. On January 25, 2010, Plaintiff filed a Motion for Default Judgment (the "Motion"). Doc. No. 14. In the Motion, Plaintiff seeks default judgment against the Defendants only as to Count I. *Id.*; Doc. No. 14-1 at 5. Attached to the Motion is the affidavit of Dean Gay, one of the auditors, which states that on March 13, 2010, he visited Lechonera El Pilon and observed two (2) television sets exhibiting the Broadcast to 30 patrons in the establishment with an unknown capacity. Doc. No. 14-1 at 21-22. Also attached to the Motion is an affidavit of

Joseph Gagliardi, Plaintiff's President, which states that the Defendants were not authorized to receive or exhibit the Broadcast.  Doc. No. 14-1 at 3.

Plaintiff requests the followings relief jointly and severally as to each Defendant:

1. FIVE THOUSAND DOLLARS ($5,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

2. FIFTEEN THOUSAND DOLLARS ($15,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

3. Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, costs and attorney's fees of ONE THOUSAND THREE HUNDRED SEVENTY ONE DOLLARS AND SEVENTY FIVE CENTS ($1,371.75).

Doc. Nos. 14 at 2; 14-2 at 6-7.[1]

## II.  THE LAW

### A.  Standard

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default.  Fed.R.Civ.P. 55 (a).   Rule 55 (b)(2) further provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or an incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>   A) conduct an accounting;
>   B) determine the amount of damages;
>   C) establish the truth of any allegation by evidence; or

---

[1] Counsel for Plaintiff sent a copy of the Motion to the Defendants by regular mail. Doc. No. 14 at 2-3.

> D) investigate any other matter.

*Id.* The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. A default judgment simply has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206). However, a default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) (citing *Nishimatsu*, 515 F.2d at 1206). Therefore, the Court must find that there is a sufficient basis in the pleadings for a judgment to be entered. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

### B.   47 U.S.C. § 605

In the Motion, Plaintiff requests relief pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 605. Doc. Nos. 14 at 2; 14-2 at 6-7. Plaintiff requests the statutory damages provided in 47 U.S.C. § 605(e)(3)(C). *Id.*

The pertinent portions of the Federal Communications Act of 1934 provide:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or of the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit that were rendered prior to October 1, 1981.

4

> (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). The Federal Communications Act of 1934, as amended, applies to the interception of satellite cable signals because satellite cable signals are "radio communications." *United State v. Howard*, 13 F.3d 1500, 1501 (11th Cir. 1994) (affirming convictions under § 605 for unauthorized interception of encrypted satellite signals). Section 605(e)(3)(A) provides a private cause of action for the unauthorized reception, interception, and use of radio communication. *Id*. Section 605(e)(3)(B)(iii) requires the Court to award "the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" under Section 605(a). 47 U.S.C. § 605(e)(3)(B)(iii).

### III. LIABILITY

The affidavit of Mr. Gagliardi states that the Defendants were not authorized to show the Broadcast and, therefore, they violated the Federal Communications Act. Doc. No. 14-1 at 3. In *United State v. Howard*, 13 F.3d 1500, 1501 (11th Cir. 1994), the Eleventh Circuit affirmed the defendant's conviction under § 605 because he was modifying electronic devices in a way that permitted users to unscramble encrypted satellite transmissions of subscription satellite television programming. *Id*. In this case, although the Plaintiff does not state the precise method used by the Defendants to unscramble the encrypted satellite transmission, Plaintiff has demonstrated both through the uncontroverted allegations in the Complaint and the affidavits of Mr. Gagliardi and Mr. Gay that the Defendants intercepted or received an unauthorized radio communication and willfully used that communication for Defendants' own benefit. Thus, the Defendants are liable for violating the Federal Communications Act.

**IV.     DAMAGES AND COSTS**

A plaintiff may elect to pursue actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff requests an award of statutory damages in the amount of $5,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $15,000.00 under subsection (C)(ii) against the Defendants, jointly and severally, plus $1,371.75 in attorney's fees and costs. 47 U.S.C. § 605(e)(3)(C)(i)(II) and (C)(ii); Doc. No. 14 at 2.

**A.   Damages under 47 U.S.C. § 605(e)(3)(C)(i)(II)**

As mentioned above, Plaintiff seeks $5,000.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Doc. No. 24-1 at 14. Section 605(e)(3)(C)(i)(II) provides: "the aggrieved party may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000 as the court considers just…." 47 U.S.C. § 605(e)(3)(C)(i)(II). "The Eleventh Circuit has not addressed a uniform formula for calculating damages under section 605." *Joe Hand Promotions v. McBroom*, 2009 WL 5031580 at *4 (M.D. Ga. Dec. 15, 2009). "Some courts will award damages as a flat sum," while other courts will "award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition." *Id.* (citing *J&J Sports Productions v. Arboleda*, Case No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859 at *6 (M.D. Fla. Oct. 27, 2009)). Still other courts will, "[w]hen the exact number of patrons is known…base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court." *J&J Sports Productions v. Ribeiro*, 562 F. Supp. 2d 498, 501-02 (S.D.N.Y. 2008). "This number varies widely from $20[.00] to $300[.00] [per patron], although most courts set a number around $50[.00]." *Id.* at 502.

6

In Plaintiff's Memorandum of Law (Doc. No. 14-3), Plaintiff states that this Court previously awarded Plaintiff $2,850.00 in statutory damages and $8,550.00 ($2,850.00 x 3) in enhanced damages as well as attorneys' fees and costs. Doc. No. 14-3 at 11 (citing *J&J Sports Productions, Inc. v. Toro et al.*, 6:10-cv-00741-MSS-GJK (M.D. Fla. September 8, 2010)). In that case, the Court awarded $50.00 per patron for the statutory damages and then multiplied that sum by three for the enhanced damages. *Id.* However, in this case, Plaintiff urges that the Court award statutory damages in the sum of $5,000.00 "based upon the rate card for the event, the loss of goodwill to the Plaintiff, the loss of subscription fees, and for deterrence of future piracy by the Defendants." Doc. No. 14-3 at 12. As discussed more fully below, Plaintiff also seeks $15,000.00 in enhanced damages. *Id.* (citing *J&J Sports Productions, Inc. v. Toro et al.*, 6:10-cv-00741-MSS-GJK (M.D. Fla. September 8, 2010); *Setanta Sports North America, Ltd. v. Greenwood, et al.*, 6:09-cv-01092-MSS-GJK (M.D. Fla. Jul. 12, 2010)).[3]

According to the affidavit of Mr. Gay, there were 30 patrons watching the Broadcast in Defendants' establishment. Doc. No. 14-1 at 21-22. Thus, if the Court were to follow *Ribeiro*, *Toro* and *Greenwood*, Plaintiff would be entitled to $1,500.00 in statutory damages ($50.00 x 30). Pursuant to the attached Rate Card (Doc. No. 14-3 at 42), Plaintiff states that the cost for Defendants to legally purchase the Broadcast was at least $1,800.00 based on an occupancy of 0-100 patrons. Doc. No. 14-3 at 13. Plaintiff states: "If Defendants were to pay that amount now, it would not make the Plaintiff whole nor would it deter this behavior in the future or compensate [P]laintiff's lawful customers for loss of customers to pirating establishments not required to charge a cover fee since they have no licensing fee to recapture." *Id.*

---

[3] In *Greenwood*, the Court also awarded $50 per patron for the statutory damages and then multiplied that sum by three for the enhanced damages. *Setanta Sports North America, Ltd. v. Greenwood, et al.*, 6:09-cv-01092-MSS-GJK (M.D. Fla. Jul. 12, 2010) (citing *Setanta Sports North America, Ltd. v. Greenwood, et al.*, 6:09-cv-00818-JA-GJK (M.D. Fla. May 21, 2010).

7

On March 1, 2010, the Court entered an Order providing Plaintiff an opportunity to provide additional evidentiary support for the damages sought. Doc. No. 21. The Court noted that the affidavits provided by Plaintiff did not contain any information regarding the Rate Card and the Rate Card was not authenticated. *Id.* at 8. Therefore, there was no admissible showing that all licensees were required to pay a minimum of $1,800.00 for the Broadcast. *Id.* To date, Plaintiff has not filed any supplemental evidentiary support. The Motion specifically requests a default judgment "jointly and severally" against each Defendant, therefore the amount of statutory damages recommended to be awarded jointly and severally under § 605(e)(3)(C)(i)(II) is $1,500.00. Doc. No. 14. Accordingly, it is recommended that the Court follow the approach set forth in *Ribeiro*, *Toro* and *Greenwood* and award $1,500.00 in statutory damages against the Defendants, jointly and severally.

B. **Damages under 47 U.S.C. § 605(e)(3)(C)(ii)**

Under 47 U.S.C. § 605(e)(3)(C)(ii), Plaintiff also seeks statutory enhanced damages in the amount of $15,000.00. Doc. No. 14 at 2. Section 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). Further, § 605(e)(2) provides: "[a]ny person who violates subsection (a) of this section willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $50,000…for the first such conviction…." 47 U.S.C. § 605(e)(2). In determining the amount of enhanced damages to award under § 605(e)(3)(C)(ii) "[t]he Court must strike a balance between deterring other

incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business." *Arboleda*, No: 6:09-cv-467-Orl-18DAB at *7. For first time violators of § 605(a), many courts, under similar fact patterns, have multiplied the amount of statutory damages awarded under § 605(e)(3)(C)(i)(II) by three (3) to compute the amount of enhanced damages. *See Kingvision Pay-Per-View Corp., Ltd. V. Wright*, Case No. 8:06-cv-892-T-30MAP, 2006 WL 4756450 at *3 n.8 (M.D. Fla. Oct. 27, 2006) (awarding enhanced damages in the amount three times the actual damages for first known violation of § 605(a) ($2,075.00 x 3)); *McBroom*, 2009 WL 5031580 at *6 ("award[ing] enhanced damages amounting to three times the statutory damages of $1,100[.00], which equals $3,300[.00]"); *Ribeiro*, 562 F. Supp. 2d at 502 ("the Court will award three times the statutory damages for enhanced damages of $4,500[.00]" ($1,500 x 3)). Because the undersigned finds that the Defendants intercepted or received an unauthorized communication and willfully used the communication for Defendants' own commercial benefit, and because this is Defendants' first known violation of § 605(a), the undersigned recommends awarding enhanced damages three times the amount of recommended statutory damages ($1,500.00 x 3) for total recommended enhanced damages, jointly and severally, of $4,500.00.

### C. Attorney's Fees and Costs

As provided in § 605(e)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(B)(iii). Counsel for Plaintiff attaches a detailed time sheet and affidavit to the Motion showing that she expended 9.18 hours of time on the case at an hourly rate of $200.00 per hour, and that a paralegal expended 3.70 hours of work on the case at $75.00 per hour for a total of $2,113.50 in attorneys' fees. Doc. No. 14-2 at 4-6. Counsel also attaches to her affidavit

documentation reflecting filing fees in the amount of $350.00 and service of process fees in the amount of $280.00, for a total of $630.00 in costs. *Id*. Therefore, counsel's affidavit reflects a total of $2,743.50 in attorneys' fees and costs. *Id*. However, in the Motion and counsel's affidavit, Plaintiff requests attorneys' fees and costs in the amount of $1,371.75. Doc. Nos. 14 at 1-2; 14-2 at 6. The Motion and counsel's affidavit specifically request a default judgment "jointly and severally" against the Defendants. *Id*. Based on the forgoing, the undersigned recommends that the Court find Plaintiff's request for an award of attorneys' fees and costs in the amount of $1,371.75, jointly and severally, is reasonable.

Accordingly, after reviewing the Complaint and Motion filed in this action, as well as the affidavits submitted with the Motion, the undersigned recommends that the Court find that a final default judgment should be entered in favor of Plaintiff and against Defendants as to Count I and award Plaintiff damages against Defendants, jointly and severally, in the amounts as outlined above.

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. No. 14) be **GRANTED in part** and **DENIED in part**;
2. The Clerk be directed to enter a default judgment against each Defendant, jointly and severally, in the following amounts:
    a. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), a sum in the amount of ONE THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($1,500.00); and
    b. Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), a sum in the amount of FOUR THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($4,500.00) for enhanced damages for each Defendant's willful violation of 47 U.S.C. § 605(a);

    and

    c. Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, costs and attorney's fees of ONE THOUSAND THREE HUNDRED SEVENTY ONE DOLLARS AND SEVENTY FIVE CENTS ($1,371.75); and

3. The Clerk be directed to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. If Plaintiff has no objection to this report and recommendation, Plaintiff may promptly file a notice of no objection with the Court.

Recommended in Orlando, Florida on March 14, 2011.

Copies furnished to:
**Presiding District Court Judge**
Counsel of Record
Unrepresented Party

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

11